**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PAULA LAUREN GIBSON and
ANNETTE D. GOODE-PARKER,
          *Plaintiffs-Appellants,*

v.

OFFICE OF THE ATTORNEY GENERAL,
STATE OF CALIFORNIA; BILL
LOCKYER; RICHARD M. FRANK;
JAMES THOMAS GREENE; KATHLEEN
FOOTE; LOUIS MAURO; JACOB
APPLESMITH; and BARBARA MOTZ,
          *Defendants-Appellees.*

No. 07-56124

D.C. No.
CV-07-00838-FMC

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
Florence-Marie Cooper, District Judge, Presiding

Argued and Submitted
November 17, 2008—Pasadena, California

Filed January 27, 2009
Amended March 18, 2009

Before: Susan P. Graber and Richard R. Clifton,
Circuit Judges, and Edward C. Reed,* District Judge.

Opinion by Judge Graber;
Partial Concurrence and Partial Dissent by Judge Clifton

---

*The Honorable Edward C. Reed, Jr., Senior United States District
Judge for the District of Nevada, sitting by designation.

3429

## COUNSEL

Paula Lauren Gibson, Los Angeles, California, in propria persona, for the plaintiffs-appellants.

Stephanie L. Quinn, Randolph Cregger & Chalfant LLP, Sacramento, California, for the defendants-appellees.

## ORDER

The opinion filed on January 27, 2009, slip opinion page 909, and published at 2009 WL 174915, is replaced by the amended opinion filed concurrently with this order.

With this amendment, the panel has voted to deny the petition for rehearing. Judges Graber and Clifton have voted to deny the petition for rehearing en banc, and Judge Reed has so recommended.

The full court has been advised of the petition for rehearing en banc, and no judge of the court has requested a vote on it.

The petition for rehearing and petition for rehearing en banc are DENIED. No further petitions will be entertained.

**OPINION**

GRABER, Circuit Judge:

Plaintiffs Paula Lauren Gibson and Annette D. Goode-Parker work for the Office of the Attorney General of the State of California ("OAG") as a lawyer and a paralegal, respectively. In violation of an internal policy of the OAG, Gibson represented Goode-Parker in a private legal malpractice case without first having obtained permission from the OAG. The OAG informed Gibson that she would be fired if she continued the private representation. Plaintiffs then filed this action against the OAG and individual decision-makers, alleging a violation of their First Amendment rights and a breach of contract. We hold that the district court properly dismissed the action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, but erred in awarding attorney fees to Defendants.

**FACTUAL BACKGROUND**

A.  *First Amendment Claim*

Gibson works as a Deputy Attorney General in the Antitrust Law Section of the OAG. Goode-Parker is employed as a Senior Legal Analyst in the same section. On June 25, 2003, Gibson filed a private legal malpractice action on behalf of Goode-Parker against a California divorce lawyer in the Los Angeles Superior Court. The malpractice claim related to the divorce lawyer's representation of Goode-Parker in a divorce proceeding. Although the OAG requires its lawyers to obtain permission in advance to engage in the private practice of law, Gibson did not seek permission to represent Goode-Parker until nearly a year after filing the malpractice case. Defendant Kathleen Foote, Senior Assistant Attorney General for the Antitrust Law Section, ultimately denied Gibson's request on the ground that the existence of a separate, pending

claim by the divorce lawyer against Gibson with the State Board of Control created a conflict of interest.

Gibson filed a grievance concerning the denial of her request to represent Goode-Parker. Gibson argued that the OAG's policy of requiring advance permission for engaging in the private practice of law violates the First Amendment. Four months later, without any formal action in response to Gibson's grievance, Gibson was informed that she would be terminated from her employment with the OAG if she did not withdraw from representing Goode-Parker in the malpractice action.

Immediately thereafter, Defendant James Thomas Greene, the Chief Assistant Attorney General for the Public Rights Division, reviewed and denied Gibson's grievance. He noted in his denial that it is difficult for a deputy attorney general to engage in the private practice of law and not come into conflict with the OAG's interests or those of a client. He also noted that the prior-approval process is necessary to prevent conflicts between a public employee's official duties and his or her outside activities, and he opined that the process is not an unconstitutional prior restraint.

Gibson appealed the denial of her grievance, and Defendant Richard M. Frank, Chief Deputy Attorney General, upheld the denial. He agreed with Greene's conclusions that the OAG's pre-approval requirement is not an unconstitutional prior restraint and that Gibson's involvement in the malpractice action created a conflict of interest. Gibson appealed Frank's decision to the Department of Personnel Administration. Her appeal was denied.

Around the same time that Gibson submitted her grievance and appeals, she requested and received permission to represent herself in connection with two additional legal matters related to the underlying malpractice case involving the divorce lawyer. First, she received permission to appeal a

sanctions order that had been issued against her in that action, subject to certain limitations, including that (1) the representation be confined to specific issues, (2) OAG resources not be used and Gibson's affiliation with the OAG not be invoked, and (3) any criticisms of Gibson's performance by the appellate court made in the course of the appeal be reported promptly to the OAG.

Gibson also was given permission to file a malicious prosecution action against the divorce lawyer. The conditions placed on Gibson by the OAG were that (1) she would not disparage the OAG or its policies; (2) she would not use office time, materials, staff, or equipment; (3) she would not invoke the OAG or her title in her representation, and (4) she would report to Greene any criticisms or concerns expressed by the court during the case.

B.    *Contract Claim*

In July 2001, Gibson entered into a written agreement with the OAG, which provided that Gibson would transfer to the Antitrust Law Section from the Health, Education, and Welfare Section. The agreement was a response to Gibson's complaints of disability discrimination and denial of reasonable accommodations, which she had made to the State Personnel Board and Department of Fair Employment and Housing. Goode-Parker provided many of the reasonable accommodation services required by Gibson. Goode-Parker alleges that she had an oral agreement with OAG that mirrored Gibson's written agreement.

Plaintiffs assert that their respective agreements provided that (1) transfer to the Antitrust Law Section would take place in order for Plaintiffs to make a "fresh start," (2) the reasonable accommodations previously provided would continue, (3) all other conditions of employment would remain the same, and (4) attorney fees for enforcement of the agreements would be available. Plaintiffs allege that these agreements

were breached by the OAG's denying Gibson certain overtime assistance, not making Goode-Parker's reasonable accommodation assistance a priority over her other work, and denying Plaintiffs flexible work hours.

## PROCEDURAL BACKGROUND

Plaintiffs filed suit against the OAG and a number of employees within the OAG. Plaintiffs claimed a breach of contract by Defendants and, under 42 U.S.C. § 1983, a violation of Plaintiffs' First Amendment rights. Defendants filed a motion to dismiss, arguing that they were entitled to qualified immunity because Plaintiffs failed to allege that they had engaged in any protected First Amendment activity. The district court agreed with Defendants, but gave Plaintiffs an opportunity to file an amended complaint to address the protected activity at issue and the adverse employment actions taken. With regard to the contract claim, the district court held that Plaintiffs failed to allege conduct that was inconsistent with the terms of the transfer agreement. The district court also held that, even if Plaintiffs had alleged breach of a particular contractual term, they failed to allege any foreseeable contract damages. As a result, the district court dismissed Plaintiffs' contract claim with prejudice but allowed Plaintiffs to file an amended complaint with regard to their § 1983 claims.

Plaintiffs did not file an amended pleading. Accordingly, Defendants asked the district court to dismiss the entire action, and the district court did so. Plaintiffs timely appealed. When the district court issued its order granting attorney fees of $21,803.52 to Defendants, Plaintiffs timely appealed that decision as well. We consolidated the appeals.

## STANDARDS OF REVIEW

We review de novo a dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

*Monterey Plaza Hotel Ltd. v. Local 483 of Hotel Employees Union*, 215 F.3d 923, 926 (9th Cir. 2000).

We review a district court's award of attorney fees for abuse of discretion. *Hall v. Bolger*, 768 F.2d 1148, 1150 (9th Cir. 1985). But we review de novo the legal standards used by the district court in awarding fees. *Miller v. Los Angeles County Bd. of Educ.*, 827 F.2d 617, 619 (9th Cir. 1987).

## DISCUSSION

A.  *Neither Goode-Parker's private malpractice action nor Gibson's representation of her was constitutionally protected speech.*

**[1]** In evaluating a First Amendment retaliation claim, this Court uses "a sequential five-step series of questions." *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). Those questions are as follows: "(1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech." *Id.* The pivotal element in this case is the first one: whether Plaintiffs spoke on a matter of public concern.

**[2]** Unlike the determination regarding whether the plaintiff spoke as a private citizen or as a public employee, which presents a mixed question of fact and law, *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1123 (9th Cir. 2008), the "public concern inquiry is purely a question of law, which we review de novo." *Eng*, 552 F.3d at 1070. Moreover, the facts regarding the public concern inquiry are undisputed here. *See Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir. 2001)

(per curiam) (holding that, in the absence of disputed facts, qualified immunity is a question of law). The question presented here is, therefore, a legal one: whether Plaintiffs' private malpractice suit is an issue of public concern.

**[3]** The Supreme Court has held that speech involves a matter of public concern when it fairly can be said to relate to "any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983). We have explained further that "[s]peech by public employees may be characterized as not of 'public concern' when it is clear that such speech deals with individual personnel disputes and grievances and that the information would be of no relevance to the public's evaluation of the performance of governmental agencies." *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983). In previous cases, we have held that issues of public concern include, for example, speech about police officers' wages and relationships with city officials, *id.*, safety and emergency policies at a public school district, *Posey*, 546 F.3d at 1124, sexual abuse of public employees while on the job, *Freitag v. Ayers*, 468 F.3d 528, 545 (9th Cir. 2006), discharges of raw sewage into the environment and exposure of public employees to dangerous contaminants, *Coszalter v. City of Salem*, 320 F.3d 968, 974 (9th Cir. 2003), mismanagement and corruption in county government, *Johnson v. Multnomah County*, 48 F.3d 420, 427 (9th Cir. 1995), leaks to the IRS about school property purchase arrangements leading to additional, more expensive public school financing, *Eng*, 552 F.3d at 1072-73, and retaliatory prosecution of a government employee, *id.* at 1073.

**[4]** Filing a legal malpractice claim against a private lawyer in connection with a private divorce matter is not an "issue of public concern." The malpractice action did not involve any suggestion of government malfeasance; nor did it purport to inform the public about the operation of government; nor was it relevant to the public's evaluation of a governmental agency's performance; nor did it challenge the conduct of any gov-

ernment official or agency, but only that of Goode-Parker's former divorce lawyer. In short, the malpractice action itself, along with Gibson's involvement in it, was a private matter between Goode-Parker and her former divorce lawyer. The mere fact that the action potentially could have affected the divorce lawyer's bar disciplinary record does not transform the litigation into a matter of political, social, or other concern to the public at large. The action remained an individual grievance that did not bear on the public's evaluation of the performance of a public agency.[1]

**[5]** Because Plaintiffs' speech here, filing a private malpractice action, does not qualify as an "issue of public concern," it is not constitutionally protected speech in the context of public employment. In the absence of a violation of their constitutional rights, Plaintiffs' 42 U.S.C. § 1983 claim against Defendants on First Amendment grounds must fail. Therefore, we hold that Defendants did not violate Plaintiffs' constitutional rights when they denied Gibson permission to represent Goode-Parker in her private malpractice action.

B.   *The OAG's policy regarding outside litigation by its employees does not constitute an improper prior restraint.*

Plaintiffs also argue more generally that the OAG's policy regarding outside litigation by its public lawyers who wish to represent themselves or others in private litigation, which Defendants applied to Gibson here, constitutes an improper prior restraint on their speech by "chilling" the speech of others who are not before the court. We are not persuaded.

"[T]he State has interests as an employer in regulating the

---

[1]The purpose of Goode-Parker's malpractice action was to receive monetary damages, not to file a public complaint with the California state bar association. We need not and do not decide whether filing a public complaint with a state bar association constitutes an issue of public concern.

speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Connick*, 461 U.S. at 146.

**[6]** We have not addressed precisely whether a public employer's policy regulating its employees' outside employment activities is a prior restraint on the employees' speech, but our decision in *Hudson v. Craven*, 403 F.3d 691 (9th Cir. 2005), provides some guidance to us. In that case, the plaintiff served as an instructor at a community college. *Id.* at 693. She organized an unofficial field trip for her students to attend a protest against the World Trade Organization despite being warned not to do so by college officials. *Id.* at 694. She then sued various college administrators when her employment contract was not renewed after the protest. *Id.* at 695. We held that the plaintiff's rights to free speech and association were at issue. *Id.* at 696. Using the balancing test established in *Pickering*, 391 U.S. at 568, we held further that the professor's protest activities were a matter of public concern but that "the legitimate administrative interests" of the college strongly outweighed the plaintiff's First Amendment freedoms. *Hudson*, 403 F.3d at 699.

**[7]** Similarly, Plaintiffs' argument that the OAG's policy is an unconstitutional prior restraint on their speech must fail. The first *Pickering* inquiry explores whether the speech that led to the adverse employment action relates to a matter of public concern, and the second inquiry questions whether, using a balancing test, the public employer can demonstrate that its legitimate interests outweigh the employee's First Amendment rights. *Hudson*, 403 F.3d at 696. As we have discussed already, Goode-Parker's private malpractice action is

not a matter of public concern and, therefore, is not entitled to free speech protections. But even if we were to credit Plaintiffs' assertion that they spoke on an issue of public concern, thereby meeting the threshold for protected speech, the OAG's policy is constitutionally sound under the second *Pickering* prong.

**[8]** The Court of Appeals for the District of Columbia is the only federal circuit court that has faced this precise issue previously. In *Williams v. IRS*, 919 F.2d 745 (D.C. Cir. 1990) (per curiam), the court upheld a policy that prohibited an Internal Revenue Service ("IRS") lawyer from engaging in the outside practice of law. In that case, the plaintiff was a senior tax lawyer employed by the IRS. *Id.* at 745. He filed a class action lawsuit against a church's board of directors for an accounting of trust funds. *Id.* The IRS maintained a policy requiring its employees to obtain written permission from the agency before engaging in any outside employment or business activities. *Id.* Because the plaintiff had failed to seek such permission, the agency suspended him for five days. *Id.* at 746. Noting that "the government may limit the exercise of a citizen's first amendment rights where government regulations are aimed to address legitimate concerns," the court upheld the agency's policy and the sanctions imposed on the plaintiff. *Id.* The court held that the policy of requiring prior written permission was proper because it was tailored to the government's interests in operating efficiently and in avoiding the appearance of impropriety. *Id.* at 747. The policy did not prohibit all outside activities. Rather, it allowed the agency to determine whether (1) there is an apparent conflict of interest, (2) tax issues are involved, (3) official information would be used improperly, or (4) the expenditure of time would adversely affect the employee's performance of his or her official duties. *Id.*

**[9]** The policy at issue here is very similar to the one examined in *Williams*. The OAG's policy reads in pertinent part:

No lawyer employed by the Department of Justice shall engage in the private practice of the law, provided, however, that he may handle personal and family legal matters in which there is no conflict with his duties as a[n] employee of the state, after first obtaining approval of the Attorney General. Lawyers, upon becoming members of the Department of Justice, with the approval of the Attorney General, will be given a reasonable time within which to close pending legal matters.

Like the policy in *Williams*, which required an employee to obtain written permission from the agency before engaging in outside employment or business activities, 919 F.2d at 745, the OAG's policy here does not unduly restrict the constitutional rights of a state-employed lawyer. The policy does not prohibit all outside practice of law. The requirement to seek written permission before engaging in outside representation allows the OAG to assess whether the requested outside employment creates any conflict of interest or impedes any other legitimate interest of the state. There is a close and rational relationship between the policy and legitimate governmental interests: The OAG has a legitimate interest in regulating practice-related conduct of its lawyers to avoid any conflict of interest and to avoid any potential prejudice to the OAG and its clients, as well as a legitimate interest in ensuring that its employees are devoting their full attention to the business of the OAG. Further, the OAG's policy is even more permissive than the policy upheld in *Williams* in that the OAG's policy requires pre-approval only for the private practice of law, not for all outside employment and business activities.

**[10]** Because the OAG's policy serves legitimate government interests and does not unduly restrict its employees' constitutional rights, we hold that the policy is not an improper prior restraint on speech.

C.    *Plaintiffs fail to state a contract claim.*

Plaintiffs allege that the OAG breached two contracts: (1) Gibson's written transfer agreement transferring her to the Antitrust Law Section along with Goode-Parker's analogous oral agreement, and (2) the Memorandum of Understanding ("MOU") between the OAG and Plaintiffs' labor unions.

The transfer agreement between Gibson and the OAG provides for her to move from the Health, Education, and Welfare Section of the OAG to the Antitrust Law Section. The agreement provides that, "by this Agreement, the Parties intend to fully and completely resolve any and all remaining disputes between them . . . and to create the fresh start desired by all." The agreement lists a number of reasonable accommodations to be provided to Gibson, including voice-activated software, a digital voice recorder, an ergonomic chair, and a paralegal to assist her on complex cases. The parties to the agreement reserved "the right to re-evaluate these accommodations from time to time based on changing circumstances and information." The agreement further represents that the parties discharge each other from any and all claims, that they have not initiated any legal or administrative proceeding against each other, with an exception not relevant here, and that they indemnify each other with regard to attorney fees in connection with the agreement.

Plaintiffs asserted in their complaint that the OAG breached the transfer agreement because the OAG denied Gibson the overtime assistance of Goode-Parker, the OAG did not prioritize Goode-Parker's reasonable accommodation assistance over her other work, Plaintiffs were micro-managed and distrusted by their superiors, and Plaintiffs were not assigned significant cases because of their complaints. None of Plaintiffs' complaints are inconsistent with the terms of the transfer agreement. The alleged denials of overtime paralegal support from Goode-Parker and failure to prioritize that assistance over Goode-Parker's other work are not denials of any

accommodations specifically set forth in the transfer agreement. The same is true for the allegations of being micromanaged by superiors and not being assigned significant cases: Even if Plaintiffs' allegations are true, they are not breaches of any provision in the transfer agreement.

With regard to the MOU, Plaintiffs allege that they were denied certain employment benefits, including flexible work hours. Even if Plaintiffs' allegations are true, however, they cannot form the basis of a breach of contract claim. Under California law, a "civil service employee . . . cannot state such a cause of action" as the terms and conditions of civil service employees are fixed by statute, not by contract. *Shoemaker v. Myers*, 801 P.2d 1054, 1068 (Cal. 1990); *see also Kim v. Regents of Univ. of Cal.*, 95 Cal. Rptr. 2d 10, 12 (Ct. App. 2000) ("[O]ur Supreme Court has made it clear that civil service employees cannot state a cause of action for breach of contract or breach of the implied covenant of good faith and fair dealing."); *Miller v. State*, 557 P.2d 970, 973 (Cal. 1977) ("Nor is any vested contractual right conferred on the public employee because he occupies a civil service position since it is equally well settled that the terms and conditions of civil service employment are fixed by statute and not by contract." (brackets and internal quotation marks omitted)).

[11] Finally, Plaintiffs' contractual claims must fail because Plaintiffs have failed to allege any foreseeable contract damages. The only alleged damages are for emotional and physical distress, neither of which is recoverable on a California contract claim. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 460 (Cal. 1994); *Sawyer v. Bank of Am.*, 145 Cal. Rptr. 623, 625 (Ct. App. 1978).

[12] In summary, because there was no breach of any contractual agreement between Plaintiffs and Defendants and because, even if there were, Plaintiffs failed to allege foreseeable damages, Plaintiffs failed to state a contract claim.

D. *Defendants are not entitled to attorney fees.*

The district court, holding that Plaintiffs' action was "frivolous" or "meritless," *see Galen v. County of Los Angeles*, 477 F.3d 652, 666 (9th Cir. 2007), awarded attorney fees to Defendants pursuant to 42 U.S.C. § 1988. We hold that the district court erred in so characterizing Plaintiffs' claims.

**[13]** "A case may be deemed frivolous only when the 'result is obvious or the . . . arguments of error are wholly without merit.' " *Karam v. City of Burbank*, 352 F.3d 1188, 1195 (9th Cir. 2003) (quoting *McConnell v. Critchlow*, 661 F.2d 116, 118 (9th Cir. 1981)). A losing § 1983 claim is without merit only if it is "groundless or without foundation." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978).

**[14]** Plaintiffs' argument that the OAG's policy is a prior restraint on speech lies at the heart of their action. Although we agree with the approach taken by the *Williams* case, no similar precedent in our circuit would have signaled to Plaintiffs that they should not bring this claim at all. Because Plaintiffs raised a question that was not answered clearly by our precedent, we hold that their claim was not frivolous and, accordingly, that Defendants are not entitled to any attorney fees.

DISMISSAL OF ACTION AFFIRMED; FEE AWARD VACATED. The parties shall bear their own costs on appeal.

---

CLIFTON, Circuit Judge, concurring in part and dissenting in part:

I fully join most of the majority opinion. My only disagreement concerns the award of attorneys' fees. I share the view

of the district court that the lawsuit filed by Plaintiffs was, in substantial part, frivolous and would thus affirm the award.

A legal proposition can be frivolous even though this court has not previously rejected it. The contention that the First Amendment guarantees a lawyer employed by the government the right to file and pursue a private legal malpractice action on behalf of another person is such a proposition. Plaintiffs cite no authority supporting that proposition or any reasonable analogy. We might not have gone down this trail before, but it was not a hard trail to blaze.

The majority opinion justifies its reversal of the fee award by observing, at 3446, that our circuit did not have precedent similar to the D.C. Circuit's per curiam decision in *Williams v. IRS*, 919 F.2d 745 (D.C. Cir. 1990). But our court did have ample precedent on the question of whether Plaintiffs' speech here was constitutionally protected, and we had no difficulty concluding that it was not. *See* majority opinion at 3438-40. We reached the *Williams* issue as an alternative ground for decision, by assuming that the speech in question was constitutionally protected, though we had already held to the contrary. *See* majority opinion at 3442 ("even if we were to credit Plaintiffs' assertion that they spoke on an issue of public concern, thereby meeting the threshold for protected speech"). Plaintiffs' First Amendment claim was plainly without merit, separate and apart from the *Williams* issue.

The district court did not abuse its discretion in finding that claim frivolous. On that element, I respectfully dissent.