**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAR 19 2012

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ANDREW ARMASWALKER, an individual,<br><br>           Plaintiff - Appellant,<br><br>  v.<br><br>EQUILON ENTERPRISES LLC, a Delaware limited liability company,<br><br>           Defendant - Appellee. | No. 10-56285<br><br>D.C. No. 2:09-cv-07183-ODW-PLA<br><br><br>MEMORANDUM[*] |
| AID, INC., a California corporation,<br><br>           Plaintiff - Appellant,<br><br>  v.<br><br>EQUILON ENTERPRISES, LLC, a Delaware limited liability company,<br><br>           Defendant - Appellee. | No. 10-56286<br><br>D.C. No. 2:09-cv-07188-ODW-PLA |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright, District Judge, Presiding

---

      [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Argued and Submitted February 14, 2012
Pasadena, California

Before:    FARRIS and W. FLETCHER, Circuit Judges, and HELLERSTEIN, Senior District Judge.[**]

In these consolidated appeals, Plaintiffs Aid, Inc. and Andrew Armaswalker (collectively, the "Franchisees") appeal the district court's grant of summary judgment in favor of Defendant Equilon Enterprises, LLC. We affirm the grant of summary judgment in *Armaswalker v. Equilon Enterprises, LLC*, reverse the grant of summary judgment in *Aid v. Equilon Enterprises, LLC*, and reverse the award of expert fees in both *Armaswalker* and *Aid*.

1.    *Statutory Framework* – The Petroleum Marketing Practices Act ("PMPA") forbids a franchisor from "fail[ing] to renew any franchise relationship," except for reasons specified by statute. 15 U.S.C. § 2802(a)(2). One such reason, at issue in this appeal, allows for termination or nonrenewal of a franchise relationship if the franchisor determines to sell the premises of a retail station "in good faith and in the normal course of business." *Id.* § 2802(b)(3)(D). As applicable to these cases, the franchisor must either (1) "ma[ke] a bona fide offer to sell, transfer, or assign to the franchisee such franchisor's interest in such

_____

[**]    The Honorable Alvin K. Hellerstein, Senior United States District Judge for the Southern District of New York, sitting by designation.

premises" or (2) "offer[] the franchisee a right of first refusal of at least 45-days duration of an offer, made by another, to purchase such franchisor's interest in such premises." *Id.* § 2802(b)(3)(D)(iii). Equilon offered each of the Franchisees a right of first refusal ("ROFR") based on a third-party offer to purchase the premises.

We begin with the reasons why we affirm the grant of summary judgment in the *Armaswalker* case. For reasons specific to the *Aid* case, we describe later why we ultimately reverse summary judgment in the *Aid* case.

2. *Affirmance of Summary Judgment in the* Armaswalker *case* – No evidence in the record shows that Equilon made the determination to sell the Armaswalker premises in bad faith by "conceal[ing] selective discrimination against" Armaswalker. *See Unocal Corp. v. Kaabipour*, 177 F.3d 755, 767 (9th Cir. 1999). It is undisputed that Equilon provided Armaswalker more than 90 days notice that its franchise agreement was not going to be renewed, pursuant to 15 U.S.C. § 2804(a). It is also undisputed that Equilon offered Armaswalker a ROFR within the 90-day period after notice was given, pursuant to 15 U.S.C. § 2802(b)(3)(D)(iii). Finally, it is undisputed that Equilon kept the ROFR open to acceptance for at least a 45-day duration, pursuant to 15 U.S.C. § 2802(b)(3)(D)(iii)(II). Given the absence of evidence of bad faith, Equilon

3

satisfied its statutory obligations for the nonrenewal of Armaswalker's franchise agreement. We reject any contention to the contrary.

Armaswalker contends that we must review the terms contained in the ROFRs for commercial reasonableness. However, in this case, Equilon did not choose to extend Armaswalker a "bona fide offer" pursuant to § 2802(b)(3)(D)(iii)(I). It instead chose to extend ROFRs pursuant to § 2802(b)(3)(D)(iii)(II). Armaswalker supports his position in favor of judicial scrutiny of the ROFR terms with cases involving a "bona fide offer." *See, e.g., Ellis v. Mobil Oil*, 969 F.2d 784, 787 (9th Cir. 1992) ("It is settled law that a bona fide offer under the PMPA is measured by an objective market standard."); *Slatky v. Amoco Oil Co.*, 830 F.2d 476, 485 (3d Cir. 1987) ("bona fide offer" case). Unlike with respect to a "bona fide offer," neither the statutory text nor any case law suggests that a court is to review the commercial reasonableness of ROFR terms.

Armaswalker complains of a provision in the contract giving Equilon certain rights of access to the UST System if the franchisee defaulted in its obligation to maintain insurance on the System. However, Equilon did not retain any ownership or possessory interest in the UST System. Thus, unlike in *Roberts v. Amoco Oil Co.*, 740 F.2d 602, 604 (8th Cir. 1984), where the franchisor retained title to gas-

4

dispensing equipment on the premises, Equilon has merely retained a contractual right of access to the UST System under limited and specified conditions.

By failing to raise the challenges to the deed restrictions in the district court, Armaswalker waived the issue on appeal. *See Taniguchi v. Schultz*, 303 F.3d 950, 958-59 (9th Cir. 2002).

The challenge to the release of liability also fails. The plain language of 15 U.S.C. § 2805(f) does not prohibit a franchisor from conditioning the termination of a franchise relationship on a general release of liability. It prohibits only a waiver of rights afforded by the PMPA as "a condition of entering into or renewing the franchise relationship." 15 U.S.C. § 2805(f). In any event, the provision for a release was withdrawn. Furthermore, the release does not evince a bad faith determination to sell the premises. *Cf.* § 15 U.S.C. § 2802(b)(3)(D). Nothing about the releases shows that Equilon's actions "are designed to conceal selective discrimination against individual franchises." *Kaabipour*, 177 F.3d at 767.

Armaswalker's ROFR did not include a leaseback provision contained in the third-party offer. Armaswalker fails to show that these leaseback provisions render the ROFR materially different from the third-party offer. The leaseback provision requires Equilon to forward rent payments made by the franchisee to the third-party purchaser once Equilon sells the property to a third party. Whether the

5

ROFR contains a leaseback provision or not, Armaswalker has no rent expense if he accepts the ROFR.

3. *Reversal of Summary Judgment in the* Aid *Case –* We now discuss why we reverse the grant of summary judgment solely in the *Aid* case. Where the third party offer and the ROFR contain materially different terms or conditions, the franchisor has not "offered the franchisee a right of first refusal . . . of an *offer*, made by another, to purchase" the premises. 15 U.S.C. § 2802(b)(3)(D)(iii)(II). The summary judgment record shows that, before the third party, Harry Hahn, bid on the premises, Hahn and Equilon reached a side agreement. We do not describe it here because it has been filed under seal. Suffice it to say that it was an agreement that was to be executed at closing. That the side agreement was not written into the final agreement between Equilon and the third party is not determinative. If an agreement is not part of a third-party offer for purposes of the PMPA merely because it was not written into the formal agreement, this would provide an easy way to evade the requirements of § 2802(b)(3)(D)(iii)(II).

Equilon counters that it later extended the side agreement to Aid, making the issue "moot" or meritless. Equilon's decision to extend the side agreement came too late. Equilon must tender an ROFR "during the 90-day period after" the notice of nonrenewal sent pursuant to 15 U.S.C. § 2804. *See* 15 U.S.C. §

6

2802(b)(3)(D)(iii). Equilon sent Aid the notice of nonrenewal on September 8, 2009. It extended the side agreement to Aid on January 13, 2010. January 13 is more than 90 days after September 8, 2009, rendering its attempt to cure the ROFR defective.

4.     *Reversal of the Award of Expert Fees* – We reverse the award of expert fees in both the *Armaswalker* and the *Aid* cases. The district court found that the Franchisees' actions were "frivolous" pursuant to 15 U.S.C. § 2805(d)(3) and so awarded expert fees to Equilon. The Franchisees appeal from the district court's award of expert fees. Because the Franchisees have "raised [several] question[s] that [were] not answered clearly by our precedent," *Gibson v. Office of Attorney Gen., State of Cal.*, 561 F.3d 920, 929 (9th Cir. 2009), we reverse the awards in both *Aid* and *Armaswalker*.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**