**Vanessa MUNOZ, on behalf of herself and all others similarly situated, Plaintiff,**

**v.**

**INGENESIS STGI PARTNERS, LLC; STG International, Inc.; and InGenesis, Inc., Defendants.**

**Case No.: 14cv1547–MMA (BLM)**

United States District Court, S.D. California.

Signed April 22, 2016

Matthew Z. Crotty, Crotty and Son Law Firm PLLC, Spokane, WA, Robert Joseph Barton, Cohen Milstein Sellers & Toll PLLC, Washington, DC, for Plaintiff.

Spencer C. Skeen, Jesse C. Ferrantella, Timothy L. Johnson, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., San Diego, CA, for Defendants.

### ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

Hon. Michael M. Anello, United States District Judge

Plaintiff Vanessa Munoz alleges Defendants InGenesis, Inc. ("InGenesis"), InGenesis STGi Partners, LLC (the Joint Venture or "JV") and STG International, Inc. ("STGi") unlawfully: (1) required her to use Paid Time Off while on military leave (Count I); (2) terminated her be-

cause she took military leave (Count II); and (3) failed to reemploy her after she returned from military leave (Counts III and IV). Defendants move for summary judgment as to all of Plaintiff's claims. *See* Doc. Nos. 162, 163. For the reasons set forth below, the Court **GRANTS** Defendants' motions as to Count I, and **DENIES** Defendants' motions as to Counts II, III, and IV.

## BACKGROUND

Plaintiff is a U.S. Navy veteran. She served on active duty as a hospital corpsman from 2007 until 2009, when she was honorably discharged from active duty. Since then she has continued to serve in the U.S. Navy Reserves.

Defendant InGenesis is a human resources company headquartered in San Antonio Texas. Defendant STGi is a "workforce solutions company" with a West Coast regional office in San Diego, California. In June 2011, InGenesis and STGi formed InGenesis STGi Partners, LLC as a joint venture to pursue government contracts. InGenesis manages Operations for the JV including project and contract management, as well as communicating with government representatives regarding contracts. STGi manages Human Resources. The two companies operate independently of one another, other than their participation in the JV.

Before the JV was formed, Plaintiff was employed by STGi as a medical technician in Kearney Mesa pursuant to a contract between STGi and the Navy. On February 28, 2013, STGi's contract with the Navy expired, and a new contract between the Navy and the JV providing similar services was formed. Accordingly, Plaintiff was terminated as an employee of STGi and instead became an employee of the JV.

Under the Navy contract, the JV agreed to provide healthcare workers to Naval Medical Center San Diego and its branch clinics in San Diego County. The JV agreed to provide these services pursuant to Navy "task orders" stating the type of healthcare workers required, the place of performance, and the performance period. Because the contract involved the provision of medical personnel, consistent staffing was an essential goal of the contract. This is the only contract the JV has ever entered into with the Navy.

After Plaintiff began work at the JV, she took military leave to serve in the Navy Reserves between the following dates:

1. April 15, 2013—May 1, 2013;

2. May 6, 2013—June 4, 2013; and

3. September 23, 2013—September 27, 2013.

On September 4, 2013, Navy Contracting Officer Representative ("COR") Kristen Matella issued a Contract Discrepancy Report ("CDR") for Plaintiff based on her "excessive leave without pay." The CDR stated that as of July 13, 2013, Plaintiff had taken 170.5 hours of leave without pay, and quoted a provision of the Navy's contract with the JV, Section C.3.1.7, which set forth that "the contractor shall replace any HCW [healthcare worker] who has been on LWOP status for a total of 40 hours per task order."

On September 10, 2013, Cory Traywick, an InGenesis employee, responded to the CDR on behalf of the JV. In her response, Traywick informed the Navy that Plaintiff had been on military leave for a majority of the reported LWOP hours, and included copies of two of Plaintiff's orders for military leave. Traywick requested additional time to determine whether termination of Plaintiff pursuant to the contract would violate federal law, and noted that the Uniformed Services Employment Reemployment Act generally requires employers to reemploy or continue to employ service members returning from a period of uniform service. Traywick also request-

ed that the Navy waive the contract requirement that obligated the JV to replace any healthcare worker who accumulated more than 40 hours of LWOP.

On September 18, 2013, Navy COR Matella replied to the JV and stated that "after a careful analysis of time sheets and leave trackers, it has been determined that notwithstanding the period in which [Plaintiff] was on military orders, she has accumulated over forty hours of LWOP." Accordingly, Matella invoked the contract language requiring replacement of any health care worker with over 40 hours of LWP, noting that Plaintiff's "inconsistent attendance has made her an unreliable member of a clinic team," and that the Navy "therefore requests that the contractor remove [Plaintiff] and provide the department with a replacement."

On September 26, 2013, the JV received a finalized CDR from Contracting Officer ("KO") Judy Draper and a request for a "detailed plan of action" with respect to Plaintiff by September 27, 2013. Accordingly, the JV informed the Navy that it planned to terminate Plaintiff. On September 30, 2013, the first day after Plaintiff returned to work from her military leave, two STGi employees working on behalf of the JV called Plaintiff and advised her that, effective immediately, she was being removed from the contract and terminated at the Navy's request due to the contract provision regarding excessive LWOP.

Plaintiff sues for discrimination under the Uniformed Services Employment Reemployment Act, 38 U.S.C. § 4301 et seq. ("USERRA). She claims that requiring her to use PTO before using LWOP when taking her military leave was unlawful pursuant to 38 U.S.C. § 4316, that her termination for taking military leave was unlawful pursuant to 38 U.S.C. § 4311, and that that Defendants' failure to rehire her after military leave was un-

lawful pursuant to 38 U.S.C. § 4312. Plaintiff seeks, inter alia, reinstatement, back pay, and liquidated damages under the USERRA. The Court denied Plaintiff's motion for class certification on December 23, 2015.

### LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense— or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248, 106 S.Ct. 2505.

The party opposing summary judgment cannot "rest upon the mere allegations or denials of [its] pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." *Estate of Tucker v. Interscope Records,* 515 F.3d 1019, 1030 (9th Cir.2008) (internal quotation marks omitted).

### DISCUSSION

Defendant STGi adopts and joins the JV and InGenesis's motion for summary judgment and separate statement of undisput-

ed material facts in substantial part. Any arguments specifically set forth by STGi are noted below.

## I. Plaintiff's Failure to Appropriately Respond to Defendants' Separate Statement of Undisputed Material Facts

Although Defendants properly submitted their Separate Statements of Undisputed Material Facts, Plaintiff failed to appropriately respond by stating whether each proposed fact was disputed, and if so, upon what grounds. Instead, Plaintiff's responses either: (1) reword Defendants' facts; (2) avoid responding to Defendants' facts by raising additional related facts; or (3) raise irrelevant facts. Plaintiff's failure to appropriately respond to Defendants' facts has made it difficult for Defendants, and for the Court, to determine what facts are disputed.

In their reply brief, The JV and InGenesis ask that the Court deem all of the facts identified in their Separate Statement of Undisputed Material Facts as admitted pursuant to Federal Rule of Civil Procedure 56(e). Rule 56(e) provides that where a party fails to properly respond to the other party's assertion of fact, the court may: (1) give an opportunity to properly address the fact; (2) consider the fact undisputed; (3) grant summary judgment if the motion shows that the movant is entitled to it; or (4) issue any other appropriate order. Although Plaintiff's failure to properly respond to Defendants' Separate Statement of Undisputed Material Facts has burdened the Court, as indicated at the hearing on April 11, 2016, the Court finds that no remedial measures are necessary. Accordingly, Defendants' request is **DENIED**.

## II. Evidentiary Objections

Plaintiff has submitted a variety of evidentiary objections to evidence cited in Defendants' motions for summary judg-

ment. *See* Doc. Nos. 167, 183. Upon due consideration, to the extent the Court considers such evidence, Plaintiff's objections are **OVERRULED**. InGenesis and the JV have also filed objections to evidence in Plaintiff's opposition to its motion for summary judgment. *See* Doc. No. 188–5. Having considered Defendants' objections, to the extent the Court considers such evidence, Defendants' objections are also **OVERRULED**.

## III. Defendants Are Entitled to Summary Judgment on Plaintiff's PTO Claim Under § 4316(d) (Count I)

USERRA, 38 U.S.C. § 4316(d), provides that an employer cannot require a person whose employment is interrupted by a period of military service to "use vacation, annual or similar leave during such period of service."

Defendants move for summary judgment as to Plaintiff's PTO claim because it is undisputed that Plaintiff was compensated for all her PTO time, and therefore any injury to Plaintiff is unlikely to be redressed by a favorable decision. Alternatively, Defendants argue that summary judgment should be granted because Defendants' policies did not require Plaintiff to use her PTO during military service.

### A. Plaintiff Lacks Standing to Pursue Her PTO Claim

██ To establish Article III standing, the party invoking federal jurisdiction bears the burden of demonstrating (1) an actual injury, (2) which is traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *see also Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177, 1184 (9th Cir.2012).

Plaintiff argues that she has standing to bring her PTO claim because injuries to statutory rights create standing, and US-ERRA prohibits employers from requiring employees to use PTO during military service. However, Plaintiff does not address the requirement that she show her injury under Count I is "likely" to be "redressed by a favorable decision" given that Plaintiff was fully compensated for her PTO. *Id.*; *Boating Indus. Assoc. v. Marshall,* 601 F.2d 1376, 1380 (9th Cir.1979) ("the necessary corollary of [the standing] requirement is that the federal court be able to provide redress through the remedy sought.").

*Richards v. Canyon Cty.,* No. CV 12–00424–S–REB, 2014 WL 1270665, at *1 (D.Idaho Mar. 26, 2014), is directly on point. In *Richards,* the plaintiff alleged that he was obligated to use his paid vacation time during his military leave, even though he did not want to. However, as is the case here, the plaintiff did not dispute that he was ultimately paid for the vacation time he was required to use. After conducting a thorough and well-reasoned analysis, the *Richards* court concluded the plaintiff's claim was not redressable under USERRA, and noted that USERRA only provides prospective plaintiffs with three types of relief:

1. The court may require the employer to comply with the provisions of the chapter;

2. The court may require the employer to compensate plaintiff for any loss of wages or benefits; and

3. The court may require the employer to pay plaintiff liquidated damages in an amount equal to the loss of wages or benefits if the employer's violation was willful.

*See id.* at *4; 38 U.S.C. § 4323(d)(1).

While recognizing that an employee "might feel aggrieved when required military service time is credited against em-

ployment vacation time which he or she might prefer to use in some other manner," the *Richards* court held that USERRA simply does not authorize such a claim where the employee was compensated for his or her paid time off, and no longer works for the employer such that injunctive or equitable relief could be appropriate.

The Court finds the reasoning in *Richards* persuasive, and finds that Plaintiff "cannot show a substantial likelihood that there is relief available to [her] that will redress [her] injury," because it is undisputed that she was paid for all of her time off, and that she no longer works for Defendants. *Richards,* 2014 WL 1270665, at *5; *see also Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 988 (9th Cir.2011) ("[O]nly current employees have standing to seek injunctive relief."). As the party invoking federal jurisdiction, Plaintiff bears the burden of proving each of element of standing. *See Lujan,* 504 U.S. at 561, 112 S.Ct. 2130 (noting on a motion for summary judgment, a plaintiff "must set forth by affidavit or other evidence specific facts" supporting each of the three standing elements) (internal quotation marks omitted); *Braunstein,* 683 F.3d at 1184. Because Plaintiff fails to identify any way in which her injury in Count I is likely to be redressed by a favorable decision, the Court finds that Plaintiff has failed to establish the final element of Article III standing, and **GRANTS** summary judgment as to Count I.

### B. Defendants' PTO Policies During Military Service

Defendants argue that they never maintained any policy requiring Plaintiff or any other person taking military leave to use PTO during military service. However, because Plaintiff has failed to establish

standing, the Court need not address this argument.

## IV. Defendants Are Not Entitled to Summary Judgment on Plaintiff's Discrimination Claim Under § 4311 (Count II)

Defendants move for summary judgment as to Plaintiff's employment discrimination claim under USERRA because Plaintiff cannot show her military service was a motivating factor in her termination, Defendants actions had nothing to do with Plaintiff's military service, and Defendants should not be held liable for any alleged discrimination by the Navy.

■■ In order to establish a USERRA discrimination claim, a plaintiff must establish: (a) membership in the armed services; (b) an adverse employment decision; and (c) that the employee's military service was a motivating factor in the employer's adverse decision. *See* 38 U.S.C. § 4311(c)(1)–(2); *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir.2002). USERRA shares the same "scheme of burden-of-proof allocations approved by the Supreme Court in NLRB v. Transportation Management Corp." *Leisek*, 278 F.3d at 898–99. Under the scheme, "the employee first has the burden of showing, by a preponderance of the evidence, that his or her protected status was 'a substantial or motivating factor in the adverse [employment] action;' the employer may then avoid liability only by showing, as an affirmative defense, that the employer would have taken the same action without regard to the employee's protected status." *Id.* at 899. Therefore, under the summary judgment standard, the Court must determine: (1) whether there is sufficient evidence from which a jury could find that Plaintiff's status or conduct was a substantial or motivating factor in Defendants' decision to terminate her employment; and (2) if there is such evidence, whether

Defendant has established as an uncontroverted fact that it would have terminated Plaintiff's employment even if she had not been a member of the military. *See id.*

### A. There is Sufficient Evidence from Which a Jury Could Find Plaintiff's Military Service was a Motivating Factor in Her Termination

■■ A USERRA plaintiff can establish the "motivating factor" element through direct or circumstantial evidence. *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1014 (Fed.Cir.2001). Circumstantial evidence can include: (a) the "employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity;" (b) the "disparate treatment of certain employees compared to other employees with similar work records;" (c) the proximity in time between exercising the protected activity and the adverse action; (d) the employer's failure to follow its own policies; (e) inconsistencies between the employer's proffered reason and its other actions; and (f) the employer's history of discrimination. *Sheehan*, 240 F.3d at 1014; *see McMillan v. Department of Justice*, 812 F.3d 1364, 1373–80 (Fed.Cir.2016).

■ There is no dispute that Plaintiff was a member of the armed services at all times relevant, and that she was subject to an adverse employment decision. Instead, Defendants argue that there is insufficient evidence from which a jury could find that Plaintiff's military service was a substantial or motivating factor in Defendants' decision to terminate her employment because of the following facts:

- "When the Navy issued its CDR after an audit of the Plaintiff's flawed timesheets, the JV questioned whether the CDR was related to her military status. (UMF Nos. 31–36.)

In other words, the JV was asking for clarification to ensure Plaintiff's military leave was protected."

- "The Navy issued a response indicating it conducted a thorough review of the timesheets and determined Plaintiff took excessive leave excluding military leave. (UMF No. 37.) On the basis of what it believed was non-military leave, the Navy requested Plaintiff's removal and a Plan of Action from the JV. (UMF Nos. 37–40.)"

- "In response to the Navy's explanation, the JV stated it would terminate Plaintiff based on the Navy's request to do so. (UMF No. 43.)"

- "At the time of Plaintiff's termination, the JV did not believe the Navy's calculations were incorrect. (UMF No. 45.) The Navy confirmed its calculation excluded military leave. (UMF No. 37.)"

Doc. No. 162–1 at 9.

Plaintiff asserts that there is sufficient evidence for a jury to determine that Plaintiff's military status or conduct was a substantial or motivating factor in Defendants' decision to terminate her because the following constitutes direct evidence of discrimination:

- "Ms. Valeros explaining to Ms. Munoz (while terminating Munoz's employment) that 'they were asking for her removal [from the Navy–JV contract] because there was in attendance issue and [Munoz] had excessive absenteeism' with Ms. Munoz responding (and Valeros not disputing) that much of Ms. Munoz's absences were caused by her military obligations. (Valeros Dep. at 96:8–16, 98:16–20, 123:5–125:8); Ex. OO at STGI 0166)."

- "The InGenesis STGi *Termination Documentation Form*', which Ms. Contreras wrote following Ms. Munoz's termination, stated:

Per contract requirements employees may not exceed over 40 hours of LWOP. She has over 291 hours of LWOP. (Including the allotted Military leave of 15 days 120 hours)' . . . '[d]uring the six-month employment., Employee had a total of LWOP–171.5 hrs, military leave w/orders 120 hours and 76.5 hours of PTO.' . . . 'incident [was] in violation of company policy' . . .'Employee stated that she is a flex reservist and has to meet specific 'Drill hours.' This has caused a conflict on meeting her obligations of the position.' (Ex. OO at STGi 0166; Valeros Dep at 107:3–22, 119:1524)."

- "Ms. Contreras, explaining the above form, by testifying:

Ms. Munoz was a, we hired Ms. Munoz to be a full-time employee on a contract. And when employees are on a contract, there is X number of hours that an employee must provide staffing support to. Ms. Munoz at this time, when she, we termed her, explained that she had all of these drill hours to meet. And so, in her meeting also her drill hours, that conflicted with her meeting the hours on the contract. And that was my, I guess, statement, really. (Contreras Dep. at 194:3–25)."

- "Ms. Valeros knowing that Ms. Munoz's leave without pay unrelated to service in the military was 23.25 hours, and agreed that 'a significant amount of the time that Miss Munoz had taken leave without pay for was for service in the military, but knowingly terminated her employment anyway. (Ex. HH at STGI 179–182; Valeros Dep. at 146:14–147:1, 147:13–17; 155:19–21)."

- "Ms. Contreras stating to the California Unemployment Appeals Board that Ms. Munoz exceeded her allotted leave (which caused her firing) because 'she was doing her reserve duties with the Navy' and that '[t]he employee was discharged for violating the excessive leave without pay policy as dictated per the contract. During the employees six (6) month employment the employee used the following leave time: 808 hours worked in the available 1184 hours: 76.5 hours of PTO; 171.5 hours of LWOP, 120 hours of allotted Military leave time.' (Ex. NN at MUNOZ 146; Contreras Dep. at 217:4–218:22; Ex. V (Hearing Tr.) at PLAINTIFF 065:13–23)."

Plaintiff also asserts that the following constitutes circumstantial evidence of discrimination:

- *Disparate treatment:* "[E]videnced by the JV's termination of Ms. Munoz because she exceeded 40 hours LWOP due to her military service whereas the JV, fully aware of such inconsistency, allowed Ms. Etheridge to remain employed even though she exceeded 40 hours LWOP. Contreras Dep. at 255:15–258:23; Ex. MM at STGi 5891–5893."

- *Temporal proximity:* "[T]he JV learned of the Navy's final CDR determination on September 26, 2013, 8:29 a.m. Franks Decl. Ex. 9 at JV 489. Ms. Traywick agreed that the CDR did not call for Ms. Munoz's termination (or removal from the contract). Traywick Dep. at 204:25–205:23, 208:4–210:6. Yet, at 4:38 PM that same day, the JV made the decision to terminate Ms. Munoz's employment upon her return from military leave. Ex. JJ at STGi 6349–6351."

- *Inconsistencies:* "Defendants claim the Navy ordered Munoz to be terminated, but the Navy vehemently denies that. *See* Plaintiff's Response to JV & InGenesis, Inc.'s Separate Statement of Undisputed Facts ('Pl. Resp. to JV SUF') at Nos. 39 & 42. Even Ms. Euwema agreed that the Navy did not have the authority to terminate Ms. Munoz's employment and that the JV, not the Navy, chose to terminate Ms. Munoz's employment. Euwema Dep. at 117:822, 119:8–21."

- *Defendants' failure to adhere to policies:* "Not only did Defendants have policies guaranteeing equal employment for veterans, but the JV's employee handbook had a policy of progressive discipline. Franks Decl. Ex. 13 at JV 355, JV 383. This policy was not followed as to Ms. Munoz as she was given no warnings of any kind and there are none documented in her employment file. Contreras Dep. At 88:23–90:25. Defendants breached their own policies in terminating Ms. Munoz. Any argument that a client's desire overrides those policies fails.... Further, the Navy Contract required Defendants to maintain a stand-by work force to fill in for employees on leave, but Defendants did not follow that policy with regard to Ms. Munoz's military leave."

- *Defendants' hostility to military personnel:* The first two bullet points of the Plan of Action "promise to subject service members to discipline for exceeding LWOP caps—an eventuality that occurs when one is mobilized to serve in the military—which violates USERRA's anti-discrimination provision. 38 U.S.C. § 4311(a). The second two bullet points promise to impose requirements that violate De-

partment of Labor USERRA regulations. For example, 20 C.F.R. § 1002.87 provides that an employee does not need employer permission to go on military leave, but the Plan of Action would require such permission. Likewise, 20 C.F.R. § 1002.85(c) provides that employees need not provide their employers military orders in advance of leave, but the Plan of Action requires providing those orders."

Doc. No. 165 at 15–18.

Defendants argue that the JV terminated Plaintiff based on its interpretation of the Navy's request, and that the Navy had determined that Plaintiff exceeded her LWOP notwithstanding any military leave. Defendants assert that at the time of Plaintiff's termination, the JV representative communicating with the Navy believed the Navy's leave determination was accurate, and that therefore military leave could not have been a motivating factor in the termination decision. However, there is sufficient evidence from which a jury could determine that Defendants did not actually believe the Navy's leave determination was accurate at the time it was made. For instance, the JV admits that Plaintiff provided proper notice of her three periods of military leave. Doc. No. 168–1 (Requests for Admission 20, 22, 24). Defendants also ran their own calculations prior to the Navy's issuance of the finalized CDR, and independently determined that much of Plaintiff's LWOP was related to military leave.[1] *See* Doc. No. 169–3;

Doc. No. 162–24. The "Termination Documentation Form," generated after Plaintiff's termination, also includes a note that Plaintiff stated that she exceeded her LWOP because "she is a flex reservist and has to meet specific 'Drill hours,'" and that "[t]his has caused a conflict on meeting her obligations of the position."[2] Doc. No. 179–2.

The Navy never shared how it determined that Plaintiff exceeded the LWOP requirement, and Defendants appear to argue that they accepted the Navy's unilateral determination without question. But because there is significant evidence showing that Defendants were aware that Plaintiff's purportedly excessive LWOP was related to her military service, a jury could determine Plaintiff's military service was a motivating factor in her termination, regardless of the Navy's determination. *See McMillan*, 812 F.3d at 1372 ("[M]ilitary service is a motivating factor for an adverse employment action if the employer 'relied on, took into account, considered, or conditioned its decision' on the employee's military-related absence or obligation.").

Additionally, the Court notes that there is a dispute as to whether the Navy ultimately requested Plaintiff's removal. For instance, although though Navy COR Matella recommended that Defendants "remove Ms. Munoz and provide the Department with a replacement," KO Judy Draper only requested that Defendants "provide a detailed plan of action ... describing how the contractor intends to ensure that contracted services for this task

---

1. During oral argument, Defendants asserted that they reasonably relied upon the Navy's ultimate determination regarding Plaintiff's hours because the Navy was responsible for Plaintiff's day-to-day supervision and had the best access to information regarding Plaintiff's leave. However, the record reflects that Defendants had sufficient access to Plaintiff's work records, including a "very detailed breakdown" of Plaintiff's hours reflecting that

Plaintiff was not in violation of the leave policy as charged in the CDR. *See* Doc. No. 169–8.

2. Maribel Contreras, an STGi employee who supported the JV's human resources department and generated Plaintiff's Termination Documentation Form, acknowledged that the "Drill Hours" were part of Plaintiff's military duties. *See* Doc. No. 168–13 at 44.

order will not continue to be interrupted on an ongoing basis."[3] Doc. No. 162–24. Furthermore, the actual Plan of Action created by the JV, besides indicating Defendants' intent to terminate Plaintiff,[4] included, among other things, a lengthy promise that JV employees working on the Navy contract would be retrained and reminded that "[e]xtended periods of leave, including military leave, must be scheduled in advance and require approval from both the contractor and government supervisors". Doc. No. 162–26. Because the request for a Plan of Action did not specifically refer to Plaintiff's termination, and the actual Plan of Action was not limited to Plaintiff's termination, a reasonable jury could find that a response to KO Draper's request did not necessarily require Defendants to terminate Plaintiff. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (holding that a court must view the evidence and draw inferences in the light most favorable to the moving party). Accordingly, summary judgment is not appropriate for this reason also. *See* Fed. R. Civ. P. 56(a) (requiring movant to show that there is no genuine dispute as to any material fact).

### B. Defendants Fail to Establish That They Would Have Terminated Plaintiff Regardless of Her Military Service

An employer is not liable under USERRA if it can show it would have taken the same action without regard to the employee's protected status. 38 U.S.C. § 4311(c)(1). Accordingly, summary judgment is still appropriate as to Count II if Defendant can show that it is an undisputed fact that Plaintiff would have been terminated regardless of her military service.

Defendants fail to show that they would have terminated Plaintiff regardless of her military leave because they provide no evidence of any reasons or circumstances independent from Plaintiff's military service that would have justified termination. For instance, there is no evidence that Plaintiff exhibited poor work performance, frequent tardiness, or engaged in some employment-related misconduct. Instead, Defendants argue that they would have terminated Plaintiff regardless of her military service because the JV–Navy contract required Defendants to terminate Plaintiff at the Navy's request.

The relevant portion of the contract (Section C.3.1.7) between the JV and the Navy states the following:

> At the discretion of the Commanding Officer and subject to the advance approval by a supervisor, COR, and the Contractor, a HCW [healthcare worker] shall enter a LWOP status upon exhaustion of any leave balance. Unless waived by the Contracting Officer, the Contractor shall replace any HCW who has been on LWOP status for a total of 40 hours per task order.

The contract does not state which entity is responsible for determining LWOP. It merely obligates the contractor to replace a health care worker who takes more than 40 hours of LWOP during a task order. Therefore, even though the Navy, without explanation, determined that Plaintiff had exceeded her LWOP hours, it is not clear whether Defendants were obligated to terminate her where they had reason to believe that the excess hours were really

---

**3.** While COR Matella acted as an investigator under the contract, only KO Draper had the authority to render a final determination regarding the proposed CDR, and KO Draper did not specifically request Plaintiff's removal or termination. *See* Doc. Nos. 168–14 at 69–70; 168–16 at 89–90.

**4.** The Plan of Action appears to mistakenly refer to Plaintiff Vanessa Munoz as "Ms. Nunez." *See* Doc. No. 162–26.

protected military leave. Furthermore, as discussed above, there is a dispute as to whether the Navy actually requested Plaintiff's removal. Accordingly, summary judgment is not appropriate here. *See* Fed. R. Civ.P. 56(a) (requiring movant to show that there is no genuine dispute as to any material fact).[5]

Because Defendants fail to establish as an uncontroverted fact that it would have terminated Plaintiff regardless of her military leave, the Court **DENIES** summary judgment as to Count II.

### C. Plaintiff Does Not Allege that Defendants are Liable for the Navy's Conduct

The JV and InGenesis argue that "Plaintiff will likely argue Defendants are liable for the Navy's conduct as a joint employer," and that Defendants cannot be held liable for the actions of the Navy because "the Navy did not engage in any discriminatory conduct." Doc. No. 162–1 at 11, 12. Plaintiff does not allege that Defendants are liable for the Navy's conduct in her complaint, so summary judgment is inappropriate as to this matter.

### V. Defendants Are Not Entitled to Summary Judgment on Plaintiff's Right to Reemployment Claims Under § 4312 and § 4313 (Counts III and IV)

Plaintiff alleges separate claims under USERRA's reemployment provisions, 38 U.S.C. §§ 4312, 4313. Doc. No.

1, ¶¶ 72–84. Section 4312 (Count III) provides reemployment rights for service members who "(1) properly notify their employers of the need for a service-related absence, (2) take cumulative absence of no more than five years, and (3) properly report to work or reapply for employment, depending upon the length of the absence." *Wallace v. City of San Diego*, 479 F.3d 616, 625 (9th Cir.2007) (citing 38 U.S.C. § 4312). Section 4313 (Count IV), sets forth the order of priority in which a returning service member entitled to reemployment under § 4312 should be reemployed. *See* 38 U.S.C. § 4313; *Petty v. Metro. Gov't of Nashville–Davidson Cty.*, 538 F.3d 431, 445 (6th Cir.2008) ("Section 4312 protects only a service person's right to reemployment, which in turn triggers § 4313's guarantee of the appropriate position of employment.").

### A. The JV and InGenesis's Motion for Summary Judgment as to Plaintiff's § 4312 and § 4313 Claims

The JV and InGenesis filed a single Motion for Summary Judgment together. However, the motion does not address whether InGenesis, Plaintiff's alleged joint employer,[6] could have reemployed Plaintiff after she returned from military service. Instead, Defendants only appear to move for summary judgment as to Plaintiff's claims against the JV. Accordingly, Counts III and IV must proceed as to Defendant InGenesis, as InGenesis has failed to meet its initial burden of establishing any basis

---

**5.** Even if the contract could be read to require that Defendants remove an employee from the contract whenever the Navy determines LWOP has been exceeded, Defendants provide no evidence showing that they always fire any employee subject to a CDR.

**6.** . Although Defendants emphasize at various points that Plaintiff was only 'actually' employed by the JV, Defendants have not sought summary judgment on the issue of

whether or not InGenesis and STGi were joint employers for the purposes of USERRA. Because Plaintiff alleges InGenesis and STGi were Plaintiff's joint employers within the meaning of USERRA in the Complaint, and because the issue has not been appropriately briefed or litigated by the parties at this point, whether or not InGenesis and STGi were Plaintiff's joint employers under USERRA will be one of the issues for the jury to determine at trial.

for summary judgment regarding the reemployment claim against it. *See Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.") (internal quotation marks omitted).

In moving for summary judgment as to Counts III and IV, the JV does not argue that Plaintiff fails to satisfy any of the three requirements set forth in USERRA § 4312(a)(1)–(3). Instead, the JV asserts that it was exempted from rehiring Plaintiff under the "changed circumstances" defense of § 4312(d)(1), and because Plaintiff was not qualified for her position pursuant to § 4313.

### 1. Summary Judgment Pursuant to the Changed Circumstances Defense is Not Appropriate

■ Under the changed circumstances defense, an employer is exempt from reemploying a service member if "the employer's circumstances have so changed as to make reemployment impossible or unreasonable." 38 U.S.C. § 4312(d)(1)(A). "For example, an employer may be excused from reemploying the employee where there has been an intervening reduction in force that would have included

---

7. It is undisputed that during the relevant time period the JV only maintained two active contracts—one with the Navy, and the other for clinical pharmacists at an Army hospital. Doc. No. 166 at 44–45; Doc. No. 162–3 at 2.

8. The court in *Mowdy* noted that "[t]here was no indication at that time, whatsoever, that plaintiff, who had permanently resigned just a month ago, had any intention to return to teach during the 1975 school year. For all defendant knew plaintiff was in the Air Force

that employee." 20 C.F.R. § 1002.139(a). However, an employer may not "refuse to reemploy the employee on the basis that another employee was hired to fill the reemployment position during the employee's absence, even if reemployment might require the termination of that replacement employee." *Id.* The employer bears the burden of establishing this affirmative defense. *Id.*

The JV argues that the Navy requested it terminate Plaintiff because she was unreliable, and that therefore it would have been impossible for the JV to put her back on the Navy contract in her prior position.[7] The JV analogizes the circumstances in this case to those of *Mowdy v. ADA Board of Education*, 440 F.Supp. 1184, 1185–86 (E.D.Okla.1977), in which the plaintiff quit his job as a teacher to join the Air Force, and the school board entered into a contract with a new teacher in his absence. *Id.* The *Mowdy* court held that requiring the defendant to rehire the plaintiff after his unexpected return "would have meant the creation of a useless job" since his position had since been filled with another teacher.[8] *Id.* at 1192.

Although the JV asserts that the reasoning in *Mowdy* is applicable to this case because reemploying Plaintiff would have required the JV to breach its contract with the Navy, unlike *Mowdy*, Plaintiff did not quit her job before taking leave, and her position was not filled by a new worker in her absence.[9] Additionally, although the

---

to stay." Accordingly, it was not unreasonable for the school to fill the plaintiff's teaching position in his absence. *Mowdy*, 440 F.Supp. at 1190–91.

9. Even if she had been replaced, 20 C.F.R. § 1002.139 provides that "[t]he employer may not, however, refuse to reemploy the employee on the basis that another employee was hired to fill the reemployment position during the employee's absence, even if reemployment might require the termination of that replace-

JV argues that it would have been unreasonable to reemploy Plaintiff because the Navy had made a determination, in Plaintiff's absence, that she should be removed from the contract, this does not appear to be the type of "changed circumstance" on behalf of a defendant that is usually contemplated under this defense. *See* 38 U.S.C. § 4302 ("[USERRA] supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter . . . ."); *United States v. Nevada*, No. 3:09–CV–00314–LRH, 2012 WL 1517296, at *5 (D.Nev. Apr. 30, 2012) ("The purpose of the exemption is to allow employers who have eliminated a reservist's position or otherwise drastically changed their business to avoid rehiring someone for a job that no longer exists.") (citing *Swint*, 961 F.2d at 60). As discussed above, there also appears to be a genuine dispute as to whether the Navy ultimately requested that Plaintiff be removed from the contract. *See* Doc. Nos. 168–14 at 69–70; 168–16 at 89–90. For these reasons, the JV fails to show that it is entitled to sum-

ment employee." *See also Cole v. Swint*, 961 F.2d 58, 60 (5th Cir.1992) ("If mere replacement of the employee would exempt an employer from the Act, its protections would be meaningless.").

10. Section 4312 provides three affirmative defenses to reemployment claims, including a defense where reemployment under the scheme set forth in § 4313 would impose an undue hardship on the employer. *See* 38 U.S.C. 4312(d)(1). Section 4313, on the other hand, provides only that where an employee cannot become qualified with reasonable efforts by the employer for the position he or she would have held absent military service, then the employee must be hired in any position with the nearest approximation to the position he or she would have held. *See* 18 U.S.C. 4313(a)(4).

mary judgment as to Count III under the changed circumstances defense.

### 2. The JV Fails to Establish that Plaintiff Was Unqualified Pursuant to § 4313

The JV contends that under 38 U.S.C. § 4313(a)(1)(A)–(B), an employer is not obligated to reemploy an employee who is not qualified for his or her former position position, and could not become qualified after reasonable efforts. Section 4313 provides for the order in which a person entitled to reemployment under § 4312 must be reemployed, and it is unclear from the statute that Plaintiff's lack of qualification is a defense to the § 4313 claim.[10] Even if it is, as the JV and InGenesis note in their motion, the Department of Labor has promulgated regulations defining "qualified" under USERRA as meaning "that the employee has the ability to perform the essential tasks of the position." 20 C.F.R. § 1002.198. Defendants provide no evidence that Plaintiff was unable to perform the essential tasks of her position as a medical technician, and instead assert only that the Navy did not want her in the position because of her purportedly excessive LWOP.[11] Accordingly, summary judg-

11. As noted above, whether the Navy ultimately called for Plaintiff's termination is disputed. Furthermore, an employer may only determine that an employee is unqualified for reemployment after making reasonable efforts to make the employee qualified. *See* 20 C.F.R. § 1002.198. The record does not reflect that Defendants made any efforts to make Plaintiff qualified for the position, such as additional training regarding the proper way to track and communicate Plaintiff's military leave. *See* 20 C.F.R. § 1002.5 ("Reasonable efforts, in the case of actions required of an employer, means actions, including training provided by an employer that do not place an undue hardship on the employer.").

ment is not appropriate as to Count IV either.

For the reasons set forth above, the JV and InGenesis are not entitled to summary judgment as to Plaintiff's § 4312 and § 4313 Claims (Counts III and IV), and their motion as to these claims is **DENIED.**

### B. STGi's Motion for Summary Judgment as to Plaintiff's § 4312 and § 4313 Claims

 STGi's motion for summary judgment as to Counts III and IV incorporates the JV's motion by reference. STGi asserts no additional case law or material facts in support of its motion. Instead, STGi asserts that "[a]ll parties agree that Ms. Munoz was not part of STGi's workforce after her employment with STGi ended on February 28, 2013 and she commenced employment with the JV on March 1, 2013." Doc. No. 163–1 at 15.

It is true that no party disputes that Plaintiff was originally employed by STGi and subsequently terminated and rehired by the JV. However, Plaintiff alleges in the Complaint that STGi continued to function as Plaintiff's joint employer under USERRA after Plaintiff was hired by the JV because of the involvement of STGi and STGi's employees in the JV. As noted elsewhere, the issue of whether STGi is a joint employer under USERRA has never been litigated, and no Defendant has appropriately moved for summary judgment as to this issue. Although STGi raises arguments related to its status as Plaintiff's joint employer under USERRA for the first time in its reply brief, it failed to appropriately raise those arguments in its motion, and the Court declines to consider them.[12] *See Lane v. Dep't of Interior,* 523 F.3d 1128, 1140 (9th Cir.2008) (noting con-

sideration of an argument first raised in a reply brief is discretionary); *E.E.O.C. v. Creative Networks, LLC,* No. CV 05–3032–PHX–SMM, 2009 WL 597214, at *5 (D.Ariz. Mar. 9, 2009) (Declining to consider arguments raised for first time in reply brief.).

Because STGi provides no additional substantive grounds upon which summary judgment should be granted as to Plaintiff's § 4312 and § 4313 claims beyond those stated in the JV and InGenesis's motion, its motion must also be **DENIED.**

### CONCLUSION

For the reasons set forth above, Defendants' Motions for Summary Judgment (Doc. Nos.162, 163) are:

1. **GRANTED** as to Count I, Plaintiff's PTO claim under 38 U.S.C. § 4316(d);

2. **DENIED** as to Count II, Plaintiff's discrimination claim under 38 U.S.C. § 4311; and

3. **DENIED** as to Counts III and IV, Plaintiff's right to reemployment claims under 38 U.S.C. §§ 4312, 4313.

**IT IS SO ORDERED.**

---

12. In its motion for summary judgment, STGi only makes the conclusory assertion that "STGi cannot have any individual liability to

reemploy Ms. Munoz with the JV, as STGi is a wholly separate entity." Doc. No. 163 at 15.